## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **IRIS RADCLIFFE** | **CIVIL ACTION** |
| | **No.:3:09-cv-00258 (JBA)** |
| *Plaintiff* | |
| **VS.** | |
| **JAMES RADCLIFFE** | |
| *Defendant.* | **May 21, 2010** |

### AMENDED AFFIDAVIT OF JAMES RADCLIFFE

James Radcliffe, being duly sworn, deposes and says:

1. My former wife, Iris Radcliffe, is an individual domiciled in and residing in the Commonwealth of Virginia.

2. I am an individual domiciled in and residing in the State of Connecticut.

3. Plaintiff has caused Notices of Lis Pendens to be recorded on properties owned by me.

4. My former wife and I were parties to a dissolution action in the State of Connecticut Superior Court, Judicial District of Danbury at Danbury captioned James Radcliffe v. Iris Radcliffe, Docket Number FA 04 0351062

returnable on January 6, 2004 (the "Action").  We ultimately tried the Action to the Court on the Regional Family Trial Docket at Waterbury.

5.      On July 24, 2006, the Court entered judgment of divorce (the "Judgment") and ordered me to pay Iris $275,000.00 by October 22, 2006. A copy of the Judgment of Divorce was attached as Exhibit A to Plaintiff's Complaint. My wife, the Plaintiff herein, filed an appeal of that judgment which stayed the effect of the judgment for two (2) years. During that period of time I was not required to pay the judgment. A copy of the Appellate Decision is attached.

6.      Due to the economic downturn, I have been unable to pay the $275,000.00 to the Plaintiff. Moreover, the two (2) year delay caused by the appeal delayed my ability to sell the property since, if my wife prevailed, the property could be hers. All automatic orders remained in effect.

7.      I am the owner of record and in possession of a certain piece or parcel of land situated in the Town of Westport, County of Fairfield, State of Connecticut commonly known as 1 Maplewood Avenue, Westport, Connecticut and more particularly described as:

All that certain piece or parcel of land with the buildings thereon, situated in the Town of Westport, County of Fairfield and State of Connecticut, being

2

known and designated as  Lot No. 1 on a map entitled "Property of W. E. Daniels and J. B. Raymond, Westport, Conn. Aug. 1910, surveyed by W. J. Wood, Jr.," which map is on file in the Office of the Town Clerk of Westport and bears file No. 103.  The said Lot No. 1 is bounded:

NORTHERLY:     120 feet by land of one Saxonmeyer, being Lot No. 2 on said map;

EASTERLY:        50 feet by the highway called Maple Avenue, now known as Maplewood Avenue;

SOUTHERLY:     145 feet by the highway known as Main Street;

WESTERLY:       131 feet by land of the Willow Brook Cemetery Association.

8.     I am the owner of record and in possession of a certain piece or

parcel of land situated in the Town of Westport, County of Fairfield, State of

Connecticut commonly known as 53 Washington Avenue, Westport, Connecticut

and more particularly described as:

That certain piece or parcel of land, together with the buildings and improvements thereon, situate in the Town of Westport, County of Fairfield and State of Connecticut, and shown as Lot 4 on map entitled "Map of Evergreen Heights Property of Leonard H. Gault and Edward B. Bradley Westport, CT July 1921," on file in Westport Town Clerk's Office and bounded:

WESTERLY:      by Washington Avenue, 50 feet;

NORTHERLY:   by lots 11, 10 and 9 s shown on said map, 110 +/– feet;

EASTERLY:      by lot 5, as shown on the map, 50.0 feet;

SOUTHERLY:   by lot 3, as shown on the map, 169 +/– feet

3

Together with the terms of an Agreement with Alice Miller, dated May 3, 1984, recorded in the Westport Land Records on May 4, 1984 in Volume 679, page 211.

9.      I am the owner of record and in possession of a certain piece or

parcel of land situated in the Town of Newtown, County of Fairfield, State of

Connecticut commonly known as 174 Taunton Hill Road, Newtown, Connecticut

and more particularly described as:

All that certain piece or parcel of land, situated in the Town of Newtown, County of Fairfield and State of Connecticut, containing 1.32 acres, more or less, being the Southerly portion of the premises shown on a certain map entitled, "Lot Belonging to Nettie M. Cooper to be conveyed to William Craig, Flat Swamp District, Town of Newtown, Conn.," on file and numbered 2373 in the office of the Newtown Town Clerk.

Said premises are bounded as follows:

NORTHERLY:  316.40 feet by land of Fred G. Meier, Jr. and Maryann Meier, being land shown and designated on map on file and numbered 2379 in the Newtown Town Clerk's office;

EASTERLY &
SOUTHEASTERLY:      407.5 feet by Taunton Hill Road;

WESTERLY:   308.70 feet by land of E. Paul Kovacs.

All of the bounding owners mentioned herein being now or formerly.

The above described premises are all of the premises shown on the above entitled map  numbered 2373 excepting therefrom the premises shown on said map numbered 2379 and are the Southerly portion of the premises

4

conveyed to William C. Craig and Elizabeth M. Craig by Nettie M. Cooper by
Warranty Deed dated May 29, 1957 and recorded in the Newtown Land Records
in Volume 140 at Page 400.

      10.     I am the owner of record and in possession of a certain piece or

parcel of land situated in the Town of Newtown, County of Fairfield, State of

Connecticut commonly known as 209 Sugar Street, Newtown, Connecticut and

more particularly described as:

All that certain piece or parcel of land, together with the buildings and
improvements thereon, situated in the Town of Newtown, County of Fairfield and
State of Connecticut, and bounded and described as follows:

North:   by highway known as Route #202, 125 feet;
East:    by land now or formerly of Philip Knobloch;
South:  by land now or formerly of John W. Behn, 125 feet; and
West:   by land now or formerly of Margaret B. Jones.

Containing one-half (1/2) acre, more or less.

      11.     I am the owner of record and in possession of a certain piece or

parcel of land situated in the Town of Westport, County of Newtown, State of

Connecticut commonly known as 48 Hilldale Drive, Newtown, Connecticut and

more particularly described as:

ALL THAT CERTAIN piece or parcel of land together with the buildings
and   improvements thereon situate in the Town of Newtown, County of Fairfield
and State of  Connecticut, and being more particularly shown and designated as
Lots 81, 82 and 83,  Block G, on a certain map of Riverside, so-called, dated May

5

1, 1925, which map is filed in the office of the town clerk of the Town of Newtown as Map No. 93, in the NewtownLand Records.

12.    On October 16, 2008, the Plaintiff caused certificates of judgment lien to be recorded in the Office of the Town Clerk of the Town of Westport in Volume 2942 Page 318 and Volume 2942 Page 320; the Office of the Town Clerk of the Town of Newtown in Volume 935 Page 339, Volume 935 Page 341, and Volume 935 Page 343.  Said certificates described the properties as above.

13.    I am the owner of the equity of redemption of the liened premises and am in possession of said premises.

14.  As per July 24, 2006 Judgment FA 04-0351062-S,  I was to Pay Defendant Iris Radcliffe $275,000 within 90 days from the entry of said decree, and it was the intent that said funds would come from the sale or mortgage of the above mentioned real estate.

15.  At the time of the Judgment, I did not have cash or sufficient liquid assets to pay Mrs. Radcliffe the monies owed.

16.  Said Judgment went on to explain, that in the event I could not pay her within the 90 day time frame that the period of time would be extended to 150 days to accommodate a sale of real estate.

6

17. The mention of any interest payments or rates during the 150 day period or beyond, was specifically excluded in said Judgment.

18. Shortly after the divorce ruling, I listed property on the market with Prudential Real Estate Company in Westport.

19. Within 30 days of above mentioned July 24th 2006 Judgment, Defendant Iris Radcliffe filed for Appeal in Connecticut Appellate Court AC-28019.

20. At the point her appeal was filed, I was advised to remove my property from the market due to the automatic stay provision of Connecticut law. I indicated that I was unable to sell or offer for sale all or any of the properties. I understood that even if a buyer was found for a property I could not sell the property until the appeal was over. Moreover, it was explained to me that the award of $275,000.00 itself could very well be reversed.

21. Once I learned that I was precluded from selling property, I looked for alternative ways to provide funds to Mrs. Radcliffe, and at approximately 4:51 PM on October 28th 2008, I notified Mrs. Radcliffe and Her divorce attorney Norman Roberts and my divorce attorney James Mulvey, via e-mail, facsimile and US Mail, that I was planning to refinance the 174 Taunton Hill Road, Newtown

7

property, and that this would allow me to provide Mrs. Radcliffe with some portion of funds toward amount owed.

22. At that very time, I was pre-approved for re-finance, and I explained in my correspondence to Mrs. Radcliffe, that I was given a tentative closing date of November 10th 2008, and since the original Washington Mutual Mortgage Account number 5928-9446-920 was in Ms. Radcliffe's name, I needed her to contact Washington Mutual Mortgage company and request a loan payoff statement and I provided her with contact information and phone number at Washington Mutual.

23. Ms. Radcliffe would not agree to my refinance at the time, and she would not request loan payoff statement from Washington Mutual, and this prevented me from closing on the November 10th close date.

24. I then made several similar documented requests subsequently, each with specific proposed closing dates, but Mrs. Radcliffe would not allow or agree to my refinance, and she refused to forward required loan payoff statement which would have enabled me to refinance and which would have given me an opportunity to make payment toward amounts ordered  by the Court.

25. During the appellate process of some two years, economic conditions deteriorated throughout the country, and the value of residential real estate fell precipitously, and since my net worth was almost entirely in real estate, my equity value declined substantially. Currently my equity value is estimated to be about one-third of what it was at the time of our initial court hearing in July 0f 2006.

26. Once it was determined that Mrs. Radcliffe's appeal was not successful, I was again allowed to place my property on the market, and I signed listing agreements with a new real estate brokerage company William Raveis located in Westport CT. Additionally, I placed properties on the Internet.

27. Also, I attempted to refinance again, with alternate mortgage companies, and so again contacted Mrs. Radcliffe asking her permission and also for loan payoff statement for Washington Mutual Mortgage company, but she did not respond, despite this being a method by which she could obtain funds toward the balance I owed her.

28. Despite many public and broker viewings, open houses and price reductions, and a second extension, and two offers over a one year period, I was unable to sell property, with William Raveis Real Estate.

9

29.Once the second extension expired, I re-listed property with a third real estate company, Al Filippone Associates, Fairfield County Real Estate, a William Raveis subsidiary, and with a very aggressive marketing effort I have had many public and broker viewings, open-houses, exclusive web site, and additional web activity, including an offer on April 24th 2010.

30. I have also had considerable interest in my properties as listed on the Internet, with one particular listing web page attracting some 22,098 viewings as of May 20th. Also, the 1 Maplewood property most recently had a broker open house on 5/20 and the brokers have planned a public open house scheduled for Sunday 5/23, and I am currently averaging 5 hours a week or more responding to internet advertisements, answering questions and showing properties.

31. With respect to my real estate portfolio and financial health, my equity value has declined precipitously consistent with the housing market in general. Additionally, since I am in the business of renting out properties, I have had considerable problems with tenants in recent years since some of them have lost their jobs, could not pay me, or are paying me reduced rents. Currently my monthly net loss after all salary and all rental revenues mortgage and debt

payments is in the range of about $2,000 per month, any this monthly loss has seriously affected my overall financial health.

32. In the 25 years I have rented out properties, I have never had to evict anyone, however I have had to evict two tenants over the last two years, and I have past and current tenants that own me amounts ranging from $5,000 to $18,000 with very low likelihood of my ability to collect. Another one of my tenants filed bankruptcy in 2006 owing me some $6,000.

33. Going into last winter, because of having problems collecting rent, I realized I would not be able to buy heating oil to heat the prior marital home, so my son and I moved out of the Taunton Hill road house and at 57 years old, me and my 16 year-old son have moved in with my 86 year-old mother so that we can reduce insurmountable financial burdens.

34. I currently have some 30 or so creditors that I am trying to keep at bay by paying minimal monthly payments, and I have not been able to pay several utility bills.

35. Because of prolonged marital dissolution in Connecticut Superior, where I was awarded physical custody of my son, followed by ex-wifes actions in appellate court which were unsuccessful, followed by her bringing motions in

11

Federal court, I have been in litigation with heavy legal bills for some seven years, and this has caused significant hardship to my son, and further financial penalties to me, make it unnecessarily difficult for me to buy him the things he needs, and the prolonged litigation instituted by Mrs Radcliffe is not in the best interest of this child, and this is not in keeping with the original orders or the spirit of the orders as was issued by the Connecticut Superior Court.

36. Despite the fact that the court had specifically ordered Mrs. Radcliffe to pay child support as long as she is working, when I've asked her, she has repeatedly claimed she is unemployed, and the fact remains that she is seriously in arrears with respect to child support, and there is currently an action pending in Connecticut Superior court to order her to begin making child support payments since she has not paid them since sometime in 2006. Successful resolution of this court action will improve my financial health, and would greatly assist me in helping to parent my son.

5-21-10

JAMES RADCLIFFE

Subscribed and sworn to before me this 21st day of May 2010.

Notary Public
Commissioner of the Superior Court

PETITA B. JIMENEZ
NOTARY PUBLIC
STATE OF CONNECTICUT
My Commission Expires Aug. 31, 2010