UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Iris Radcliffe,<br>    *Plaintiff*,<br><br>    v.<br><br>James Radcliffe,<br>    *Defendant*. | Civil No. 3:09cv258 (JBA)<br><br><br><br>July 6, 2010 |

RULING ON ATTORNEYS FEES

Plaintiff Iris Radcliffe brought this diversity action to foreclose judgment liens that she recorded on five properties belonging to Defendant James Radcliffe and that she obtained as part of a marriage dissolution decree issued in Connecticut Superior Court. This Court granted summary judgment for Plaintiff on March 9, 2010, holding that she was entitled to use this process to satisfy her money judgment. Plaintiff now seeks attorneys fees and costs under Conn. Gen. Stat. §§ 52-350f and 52-400c, claiming that Defendant's failure to pay the money judgment sum awarded in state court was unjustified and that his litigation strategy was undertaken solely for the purpose of further delaying payment. The Court held an evidentiary hearing on May 27, 2010.

I.    Background

In 2003, Defendant brought a dissolution action against the Plaintiff in Connecticut Superior Court. Following a bench trial in family court in Waterbury, the court entered judgment on July 24, 2006 (the "July 24 Judgment"), which included an order that Defendant pay Plaintiff $275,000 within 90 days. According to Defendant, the $275,000 he owed to his wife was "to come from either mortgaging or selling real estate" he owned. (Hr'g Tr.

[Doc. # 79] at 55:16–19.)  At the time of the July 24 Judgment, Defendant had insufficient cash to pay Plaintiff the monies owed.  (*Id.* at 55:13–15.)

Shortly after the July 24 Judgment, Defendant listed property he owned located at 1 Maplewood Avenue in Westport, Connecticut, on the market with Prudential Real Estate Company.  (*Id.* at 56:1–10.)  Plaintiff timely appealed the July 24 Judgment, however, which stayed its effect for two years.  Defendant testified that he removed his property from the market when Plaintiff appealed because it was his "understanding . . . that [he] had to remove the property from sale given Connecticut's automatic orders" upon appeal.  (*Id.* at 57:3–7.)  He also testified that during the pendency of the appeal, he was unable to refinance his properties because Plaintiff placed liens on them.  (*Id.* at 57:14–17.)  In late 2008, after Plaintiff's appeal was dismissed, Defendant attempted to refinance property he owned at 174 Taunton Hill Road in Newtown, Connecticut to provide Plaintiff with a portion of funds toward the amount owed.  He was pre–approved to refinance that property, but because the original mortgage listed Plaintiff as the borrower, Defendant needed Plaintiff's agreement to obtain the mortgage information before he could proceed; Plaintiff did not accede to Defendant's request.  (*Id.* at 66:2–24)

During the two–year pendency of Plaintiff's appeal, the value of Defendant's residential real estate "declined precipitously."  (*Id.* at 113:7–10.)  Nonetheless, Defendant testified that since 2008 he has made "continuous efforts" to market his properties.  (*Id.* at 71:8–15.)  He also attempted again to refinance properties with alternative mortgage companies, again seeking permission from Plaintiff to obtain the required loan payoff data from the mortgage company and again receiving no response from her.  (*Id.* at 97:17–98:10.)

Despite hosting open houses and viewings, and generating interest, Defendant has remained unable to sell the properties.

Although Defendant has derived rental income from some of the properties in the past, since the economic downturn beginning in 2008 some of his tenants have defaulted on their rents or have only been able to pay reduced rents. Defendant testified that his losses in rental real estate totaled $25,000 in 2006, $15,000 to $20,000 in 2007, and about $50,000 in 2008. (*Id.* at 76:1–11.) He maintains that at no point after 2006 has he been able to pay the $275,000 due under the July 24 Judgment without selling or mortgaging property. (*Id.* at 79:25–80:6.)

On February 12, 2009, Plaintiff initiated this action. On May 1, 2009, Defendant filed a motion to dismiss for lack of subject matter jurisdiction, which the Court denied on August 4, 2009. The Court granted Plaintiff's motion for summary judgment and denied Defendant's cross-motion for summary judgment, after which Defendant filed a motion for reconsideration that the Court denied on May 13, 2010.

II.     Discussion

Pursuant to Conn. Gen. Stat. §§ 52-350f and 52-400c, Plaintiff seeks attorneys fees that she argues are justified by Defendant's continuing failure to pay her the sum he owes under the July 24 Judgment.[1] Section 52-350f provides that "a money judgment may be enforced, by execution or by foreclosure of a real property lien, to the amount of the money

---

[1] In its Ruling on Motions for Summary Judgment [Doc. # 47], the Court held that the July 24 Judgment is, under Conn. Gen. Stat. § 52-350a(13), a "money judgment" that Plaintiff may enforce "by foreclosure of a real property lien" pursuant to Section 52-350f.

3

judgment with . . . any attorney's fees allowed pursuant to section 52-400c." Section 52-400c, in turn, authorizes attorneys fees

> in the discretion of the court . . . at any other hearing that is reasonable and necessary for the enforcement of rights pursuant to a postjudgment procedure that is held on a claim or defense that the court determines was made for the purpose of harassment or solely for the purpose of delay.

In *Moasser v. Becker*, 107 Conn. App. 130 (2008), the Connecticut Appellate Court interpreted a fee award under Section 52-400c as permitting attorneys-fee awards against only those defendants "who had interposed postjudgment defenses," and as not permitting an award of fees against defendants who initiated no postjudgment defense. *Id.* at 136.

Iris Radcliffe seeks attorneys fees under Section 52-400c on the theories that Defendant frivolously moved to dismiss her foreclosure action and has failed to pay the sum due under the July 24 Judgment for three years without justification. She asserts that "Defendant has made no efforts to make any payments to Plaintiff and has not paid any amount into escrow in good faith, necessitating the filing of the judgment liens and the instant action," and this "failure to pay for over three years, including [Defendant's] filing of a Motion to Dismiss solely for the purpose of delay, warrants the award of attorneys' fees." (Pl.'s Mem. Supp. J. [Doc. 31] at 8–9.) Under *Moasser*, Section 52-400c permits an award of fees for costs incurred responding to "interposed postjudgment defenses" of claims, but not for costs incurred because of the delay itself. Plaintiff's second theory—Defendant's delay—therefore provides no basis on which to award fees.[2]

---

[2] Even if Section 52-400c called for attorneys fees when a party unjustifiably delays paying a money judgment, the evidence shows that Defendant's failure to timely pay Plaintiff was not to harass Plaintiff or *solely* for the purpose of delay. Defendant was unable to sell his properties during the two–year pendency of Plaintiff's appeal, and Plaintiff hindered his attempts to refinance his properties to generate sufficient liquidity to pay the money

4

Thus, the relevant inquiry is whether Plaintiff has shown Defendant's litigation strategy—filing motions to dismiss and for summary judgment, opposing summary judgment, and moving for reconsideration—to have been pursued solely to delay payment of the money judgment he owes to Plaintiff. Plaintiff points to no evidence that Defendant's efforts to dismiss this case were undertaken solely to delay enforcement of the July 24 Judgment other than their lack of legal merit. By contrast, Defendant repeatedly asserted that he wanted to pay Plaintiff the amount due as quickly and with as little conflict as possible. (*See, e.g.*, Hr'g Tr. at 99:20–25 ("So under the circumstances I am, you know, hellbent to do my best to sell or refinance properties to satisfy the debt and go beyond this.").) It is the housing market, not his counsel's litigation strategy, that has delayed Defendant's satisfaction of the judgment against him. Further, although the Court determined that Defendant's motions lacked legal merit, his arguments reflected the somewhat unusual posture of the case resulting from Plaintiff's use of the federal court to enforce a state–court divorce judgment. In Defendant's motions to dismiss and for summary judgment, and during oral argument on summary judgment, Defendant's counsel maintained that enforcement of the July 24 Judgment should be handled in Connecticut Superior Court because family court judges are best equipped to enforce judgments that arise out of dissolution decrees, which he argued are "carefully crafted mosaics," "each element of which may be dependent on the other." (Def.'s Mem. Supp. Mot. Dismiss. [Doc. # 17] at 8–9 (quoting *Pellow v. Pellow*, 113 Conn. App. 122, 129 (2009).) While the state family–court route is available and likely more commonly utilized, this Court has diversity jurisdiction, and this action is not subject to the domestic–relations exception. Nonetheless,

---

judgment.

the record reflects no basis for equating, or inferring from, the weakness in Defendant's policy–based rationale a purpose of harassment or solely for the purpose of delay.

III.   Conclusion

For the reasons stated above, the Court will not award attorneys fees to Plaintiff under Conn. Gen. Stat. §§ 52-350f and 52-400c.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of July, 2010.